ROTHENBERG, J.
S05 501, LLC (“the Buyer”) appeals from the trial court’s final order granting Metro-Dade Title Co.’s (“the Escrow Agent”) motion for judgment on the pleadings on the Buyer’s breach of fiduciary duty and gross negligence claims, which were premised on the allegation that the Escrow Agent wrongfully disbursed the Buyer’s escrowed deposit funds. We affirm.
The Buyer entered into a pre-con-struction purchase contract to purchase Unit 501 of the South of Fifth condominium in Miami Beach. Metro-Dade Title Co. was designated the escrow agent, and the escrow agreement was expressly incorporated into the purchase agreement. Paragraph 2(b) of the escrow agreement sets forth the procedure governing the disbursement of the Buyer’s deposit, stating:
Escrow Agent shall disburse the purchaser’s deposit(s), escrowed hereunder ... [t]o developer, within five (5) days after the receipt of Developer’s written certification that the purchaser’s contract has been terminated by reason of said purchaser’s failure to cure a default in performance of purchaser’s obligations thereunder.
(emphasis added). In paragraph 4, the parties limited the Escrow Agent’s responsibilities upon receiving such written certification in the following manner:
Escrow Agent may act in reliance upon any writing, instrument, or signature which it, in good faith, believes to be genuine, may assume the validity and accuracy of any statements or assertions contained in such writing or instrument and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so. Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any written instructions delivered to it, nor as to the identity, authority, or rights of any person executing the same. The duties of Escrow Agent shall be limited to the safekeeping of the deposits and the disbursement of same in accordance with the written instructions described above. Escrow Agent undertakes to perform only such duties as are expressly set forth hereto, and no implied duties or obligations shall be read into this Agreement against Escrow Agent.
Pursuant to the terms of the purchase agreement, the Buyer deposited $546,250 (10% of the purchase price) into escrow, and was required to deposit an additional 10% of the purchase price at a later date. The Buyer, however, never tendered the additional deposit. As a result, on February 10, 2009, the developer sent a letter to the Escrow Agent advising as follows:
The above-mentioned Purchase Agreement was formally declared in default on January 29, 2009. As pursuant to Paragraph 13 (Default), Buyer failed to make scheduled additional deposits and other payments and was given more than the required ten (10) days to correct same. Therefore, as pursuant to said Paragraph Seller is entitled to compensation for this damage, and thus is allowed to retain all of Buyer’s deposit.
Proper notice was given in accordance with Paragraph 21 (Notices); Buyer was notified in person, by phone, and in writing. Furthermore, we have complied with all conditions of the existing Escrow Agreement. Therefore, we have declared the above-mentioned contract null and void. As Escrow Agent, we are *1194 instructing you to ... transfer from the deposit of said Unit to 801 the amount of $250,000 so as to be able to fully reimburse the deposit of said Unit 301 to [b]uyer. The remaining balance in the amount of $296,250.00 shall be retained in escrow until further notice.
Based on these instructions, the Escrow Agent disbursed $250,000 of the Buyer’s escrowed deposit to the prospective purchaser of Unit 301,[1] and continued to hold the balance of the Buyer’s deposit in escrow.
The Buyer alleges that it had an oral agreement with the developer whereby the developer waived the subsequent deposit. The Buyer ultimately filed a law suit against the Escrow Agent alleging claims of breach of fiduciary duty and gross negligence for failing to verify the representations made by the developer before complying with the written directives it received from the developer instructing it to disburse the Buyer’s deposit. On May 7, 2012, the Escrow Agent filed a motion for judgment on the pleadings, which the trial court granted. After the trial court entered final judgment in favor of the Escrow Agent, this appeal followed.
While “escrow holders have a fiduciary duty to exercise reasonable skill and ordinary diligence,” Watkins v. NCNB Nat’l Bank of Fla., N.A., 622 So.2d 1063, 1064 (Fla. 3d DCA 1993), “Florida law has established that parties may limit escrow agents’ responsibilities through contract.” Resolution Trust Corp. v. Broad & Cassel, P.A., 889 F.Supp. 475, 479 (M.D.Fla.1995); see also SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P. A., 584 So.2d 1051, 1054 (Fla. 2d DCA 1991) (noting that “the language of the escrow agreement is the ‘primary consideration’ in determining the nature and extent of the agency” and that “[o]ther courts have also emphasized that the escrow agent is a special or limited agent with duties primarily established by the escrow agreement”).
For instance, in Resolution Trust Corporation, Broad & Cassel served as escrow agent for a land purchase and improvement transaction between Calusa Trace Development Corporation (“the seller”) and St. Joseph’s Health Care Center, Inc. (“the buyer”). Resolution Trust Corp., 889 F.Supp. at 476. The buyer placed $400,000 in escrow to be paid to the seller upon its completion of certain improvements to the subject property. Id. Under the escrow agreement, the parties strictly limited Broad & Cassel’s duties as escrow agent as follows:
The only duty of the Escrow Agent under the terms of the [agreement] shall be to pay the funds held in escrow ... as directed from time to time by [the b]uyer, to pay the costs of construction and installation of the improvements. The Escrow Agent shall disburse said funds only upon receipt of a written certification and direction from the [b]uyer ..., which shall specifically identify each person to whom a payment is to be made, the amount to be paid to each such payee, and the purpose for such payment. The Escrow Agent shall have the absolute right and shall be required to rely solely and entirely upon such Direction to Pay from the [b]uyer, and shall have neither the responsibility, nor the right to inquire into such Directions to Pay from the [b]uyer.
[[Image here]]
... All parties agree that the Escrow Agent shall not be liable to any party or *1195 person whomsoever for misdelivery to [the s]eller or [the b]uyer of monies subject to this escrow, unless such mis-delivery shall be due to willful breach of this agreement or gross negligence on the part of the Escrow Agent.

Id.

The seller later assigned its rights under the escrow agreement to HomeFed Bank to secure a loan, and the assignment was forwarded to and acknowledged by Alice White, an attorney at Broad & Cassel. Id. at 477. Thereafter, the seller’s representative sent a letter to the buyer’s counsel announcing that $800,000 worth of improvements had been completed on the parcel and requesting the release of $300,000 to the seller from the escrow fund. Id. The buyer’s counsel then sent a letter to Igal Knobler, another attorney at Broad & Cassel who had no knowledge of the assignment to HomeFed, directing the escrow agent to pay the seller $300,000 from the escrow fund. Id. Pursuant to these instructions, Knobler authorized the disbursement of $300,000 to the seller’s operating account. Id. The seller later defaulted on its loan, and Resolution Trust Corporation, as conservator for assignee HomeFed Bank, brought an action to recover the funds disbursed to the seller, asserting that Broad & Cassel violated its contractual and fiduciary duties. Id.
In entering summary judgment against HomeFed Bank, the federal district court reasoned as follows:
First, Broad & Cassel had very limited duties as an agent under the escrow agreement. Florida law has established that parties may limit escrow agents’ responsibilities through contract. Under Paragraph Four of the escrow agreement, the escrow agent did not have the responsibility nor the right to inquire into directions to pay made by St. Joseph’s. The parties to the escrow agreement therefore could not have relied on Broad & Cassel for independent investigation of whether any party was entitled to the escrow funds. Regardless of this limitation, [Resolution Trust Corporation] asserts that Broad & Cas-sel should have refused to adhere to instructions from St. Joseph’s. The escrow agreement prohibited such independence, and Broad & Cassel’s fiduciary duty cannot be interpreted so broadly as to contravene the agreement.
Id. at 479-80 (internal citations omitted).
The case presently before this Court is analogous to Resolution Trust Corporation. First, as in Resolution Trust Corporation, the Escrow Agent was contractually required to disburse the Buyer’s deposit to the developer. Specifically, the escrow agreement provides the “Escrow Agent shall disburse the purchaser’s deposits), escrowed hereunder ... [t]o developer, within five (5) days after the receipt of Developer’s written certification that the purchaser’s contract has been terminated by reason of said purchaser’s failure to cure a default in performance of purchaser’s obligations thereunder.” The pleadings reflect that this contractual obligation was triggered on February 10, 2009, when the developer sent a written certification, in the form of a letter, to the Escrow Agent advising that the developer declared the Seller in default, and the purchase agreement “null and void,” because the “Buyer failed to make scheduled additional deposits and other payments and was given more than the required (10) days to correct same.” Second, as in Resolution Trust Corporation, “[u]nder Paragraph Four of the escrow agreement, the escrow agent did not have the responsibility nor the right to inquire into directions to pay made by [the developer].” Id. More particularly, the parties in the instant case agreed that the:
*1196 Escrow Agent may act in reliance upon any writing, instrument, or signature which it, in good faith, believes to be genuine, may assume the validity and accuracy of any statements or assertions contained in such writing or instrument and may assume that any person purporting to given any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so. Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any written instructions delivered to it, nor as to the identity, authority, or rights of any person executing the same. The duties of the Escrow Agent shall be limited to the safekeeping of the deposits and the disbursement of same in accordance with the written instructions described above. Escrow Agent undertakes to perform only such duties as are expressly set forth hereto, and no implied duties or obligations shall be read into this Agreement against Escrow Agent.
Thus, as in Resolution Trust Corporation, “[t]he parties to the escrow agreement ... could not have relied on [the Escrow Agent] for independent investigation of whether any party was entitled to the escrow funds.... The escrow agreement prohibited such independence, and [the Escrow Agent’s] fiduciary duty cannot be interpreted so broadly as to contravene the agreement.” Id.
In sum, our review of the pleadings demonstrates that the Escrow Agent’s disbursement of the escrowed funds was contractually required by the escrow agreement, and that the Escrow Agent was expressly relieved from any duty or obligation to investigate the veracity of the developer’s disbursement instructions under these circumstances. Therefore, as a matter of law, the Escrow Agent could not have breached its fiduciary duty by, nor was it grossly negligent for, disbursing the funds in the manner instructed by the developer and required by the escrow agreement.
Affirmed.

. We do not address the propriety of the Escrow Agent’s disbursement of the funds to the prospective purchaser of Unit 301 rather than to the developer. The Buyer in this case does not have standing to raise this challenge.